UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WINSTON BANNER,

                Petitioner,

   -vs-

SUPERINTENDENT, EASTERN
CORRECTIONAL FACILITY

                Respondent.
_____

**DECISION AND ORDER**
**No. 03-CV-0595T**

**I. Introduction**

*Pro se* petitioner Winston Banner has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered April 6, 2000, in New York State, Monroe County, convicting him of Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree.

For the reasons stated below, the petition is denied.

**II. Factual Background and Procedural History**

On July 8, 1999, in the City of Rochester, Petitioner and Kevin Pierre ("the co-defendant") fired handguns at Curtis Crawley ("the victim"), killing him. The autopsy showed that the victim was shot in the back and that the fatal bullet came from the co-defendant's gun. Plea Minutes [P.M.] (Jan. 6, 2000) 15-16.

On January 6, 2000, Petitioner offered a plea of guilty to the indictment charging him with Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree. P.M. (Jan. 6, 2000) 19.

As part of the plea agreement, the court was to impose a sentence of fifteen years to life, concurrent with a Federal sentence that was about to be imposed and was expected to be about twenty years.[1] P.M. (Jan. 6, 2000) 2-9. This sentence was less time than what the People would be seeking if the case were to proceed to trial. P.M. (Jan. 6, 2000) 8. At the time of the state court plea, the trial court indicated to Petitioner that if something unanticipated occurred in Federal court which vitiated the plea agreement and forced the state case to trial, Petitioner's statements at the plea colloquy could be used against him. P.M. (Jan. 6, 2000) 11. Petitioner agreed to this condition and gave up his right to remain silent in exchange for a shorter sentence and that his state sentence would run concurrently with the Federal sentence when it was imposed. P.M. (Jan. 6, 2000) 2-9, 11. The state trial court indicated it would defer accepting the proffered guilty plea until the Federal case was resolved. P.M. (Jan. 6, 2000) 19.

---

[1] Petitioner was represented by a separate attorney in Federal Court where he was charged with one count of Conspiracy pursuant to 21 U.S.C. § 846 to Distribute a Controlled Substance in violation of 21 U.S.C. § 841. Docket Number [Dock.] 99-CR-6089.

During the plea colloquy, defense counsel noted, for the record, that he had advised Petitioner that his excuse that the victim had shot at him a week earlier would not constitute a viable claim of self-defense if the case went to trial.  P.M. (Jan. 6, 2000) 16-17.

Over the course of the next three months, Petitioner made multiple appearances in state court and, on each occasion, his state sentencing was postponed because the Federal charges still had not been resolved.[2]  P.M. (Feb. 14, 2000) 2.  On February 14, 2000, the trial judge -- no longer willing to await the outcome of the Federal charges -- gave Petitioner the choice between withdrawing his plea and going to trial or entering the plea with the imposition of the agreed-upon fifteen years to life sentence but with no guarantee that the Federal sentence would be imposed concurrently.  P.M. (Feb. 14, 2000) 3-4.  Appellant elected to enter the guilty plea and the agreed-upon sentence was imposed. P.M. (April 6, 2000) 9.

Petitioner was never prosecuted in the Federal proceeding. Dock. 99-CR-6089;  Petition [Pet.], Attachment [Att.] 10.

---

[2]   Petitioner was involved in plea negotiations in the Federal proceeding during this time.  Defense counsel in the Federal prosecution was working to secure a sentence for the Petitioner that would be equal to or slightly greater than the time he would be serving on the state court sentence.  Said counsel initially appeared on the record in the state court proceeding, indicating that he anticipated being able to secure this plea arrangement in Federal Court for the Petitioner.  P.M. (Jan. 6, 2000) 6.  He appeared again, on the record, on March 30, 2000, reporting that he was unable to secure this plea arrangement in Federal Court because the Court was unwilling to sentence the Plaintiff to a sentencing range of 210-262 months. P.M. (March 30, 2000) 5.

The Appellate Division, Fourth Department, unanimously affirmed Petitioner's conviction. People v. Banner, 291 A.D.2d 858 (4th Dept 2002). The New York Court of Appeals denied leave to appeal. People v. Banner, 98 N.Y.2d 648 (2002). Petitioner filed no motions for collateral relief in state court. This habeas petition followed.

**III. Discussion**

A. Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995)." The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

**B.   The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724,

729 (2d Cir. 2002) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to *bar consideration* on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit)), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be.'" Id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issues] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

**Analysis of the Petition:**

Petitioner claims he was deprived of due process because his guilty plea was not entered knowingly and voluntarily and was coerced. Pet., ¶22A. The Appellate Division affirmed Petitioner's

conviction, ruling that by failing to move to withdraw his guilty plea or vacate the judgment, Petitioner failed to preserve his contention that he was coerced into pleading guilty, and, in any event, the contention was without merit. Petitioner's claim, which was determined on an adequate and independent state procedural ground, is procedurally defaulted and habeas relief must be denied. See Coleman v. Thompson, 501 U.S. 722, 735 (1991); (state court's reliance on state procedural bar must be "clear from face of opinion"); Glenn v. Bartlett, 98 F.3d 721 (724-25 (2d Cir. 1996) (where a state court has said that a claim is "not preserved for appellate review" and then ruled "in any event" on the merits of the claim, such claim is not preserved and cannot be reviewed by a federal court); Haynesworth v. Fischer, 2007 U.S. Dist. LEXIS 56233 *51 (S.D.N.Y. August 3, 2007) (habeas claim barred by an adequate and independent state ground where Petitioner failed to move to withdraw guilty plea or bring motion to vacate conviction); See also New York Criminal Procedure Law §§ 220.60; 440.10.

Moreover, Petitioner has failed to establish cause or prejudice for the default or that failure to consider the claim would result in a miscarriage of justice. See Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986). Accordingly, habeas relief is not available to Petitioner. However, even if Petitioner was not procedurally barred from seeking habeas relief, his claim is without merit.

-6-

**The Original Plea Bargain**

Petitioner alleges, generally, that he was coerced into pleading guilty in the state court prosecution under "extraordinary pressure from the New York State and Federal governments.[3]" Pet. ¶22A, Att. 8. More specifically, he argues that his waiver of the justification defense was obtained under coercive circumstances when the trial court told Petitioner that his plea colloquy would be useable against him at trial if he chose to go to trial. He argues that the issue was further compounded to his detriment when the trial court judge altered the terms of the original plea agreement, failing to indicate which conditions were and were not in effect anymore. These alleged coercive circumstances, Petitioner argues, effectively rendered the plea invalid. The record, however, belies the claim that he was coerced into pleading guilty.

A guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). It is a settled principle of federal constitutional law that a guilty plea violates due process and is therefore invalid if not entered voluntarily and intelligently. Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 244 (1969). A plea of guilty is

---

[3] Petitioner alleges that the coercion was achieved through "threats, lies and unfulfilled promises" from both governments. Pet., Att. 11.

considered voluntary and intelligent if the defendant enters the plea with full awareness of its "direct consequences." Brady 397 U.S. at 755. "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). In this case, there is nothing in the record that suggests that Petitioner was coerced into entering the guilty plea. P.M. (Jan. 6, 2000) 2-3, 11. One of the conditions of the original plea was that, if something unanticipated happened in Federal Court, the District Attorney could use the defendant's statements made during the colloquy (not the guilty plea itself) at trial. P.M. (Jan. 6, 2000) 11. Petitioner was agreeable to this arrangement, and, with the advice of counsel, entered a plea of guilty and proceeded to recount the events of July 8, 1999. P.M. (Jan. 6, 2000) 11. In the course of doing so, he indicated that he believed his life was in danger when he shot at the victim. P.M. (Jan 6, 2000) 13. When he indicated this, the trial court immediately paused, and explained to Petitioner that he was waiving his right to present a self-defense defense by pleading guilty. P.M. (Jan. 6 2000) 13. Petitioner indicated, on the record, that he understood this and that he agreed to waive the right to a self-defense defense. P.M. (Jan. 6, 2000) 13. Furthermore, Petitioner's attorney noted, for the record, that he did not believe, under the facts of the case,

that Petitioner had a viable self-defense defense at trial.[4] P.M. (Jan. 6, 2000) 17. Again, the trial court confirmed with Petitioner that he understood he was willing to give up his right to raise a self-defense defense. P.M. (Jan. 6, 2000) 18. This Court finds nothing on the record to suggest that the waiver was made involuntarily, unknowingly or under the threat of coercion. And, this Court notes, in any event, that Petitioner's attorney had already determined, in his professional opinion, that such a defense would not be viable at trial.

In this same vein, Petitioner also develops a related argument in his petition that the plea arrangement was in some way coercive on its face in that it discouraged him from withdrawing his plea. There is nothing per se coercive in this type of plea agreement, wherein the arrangement is structured so as to deter a Petitioner from reneging on a negotiated plea and proceeding to trial. See People v. Seaberg, 74 N.Y.2d 1, 8-9 (1989) ("[n]othing requires a defendant to seek a plea bargain and there is nothing coercive in leaving with the defendant the option to accept or reject a bargain if one is offered."); People v. Moore, 66 N.Y.2d 1028, 1030 (1985) (statements made during course of plea negotiations can be used against a defendant if People had specifically bargained for that

---

[4] The victim was shot in the back, no weapon was found on or around the victim's person, and no bullets or casings were found in the vicinity of the victim. There was also evidence that the victim had menaced Petitioner prior to his death, but such menacing occurred approximately one week before the victim was shot and killed.

use); People v. Williams, 36 N.Y.2d 829, 830 (1975) (defendant is not a victim of "situational coercion", compelled to execute waivers as condition of plea); see also Santobello v. New York, 404 U.S. 257, 260 (1971) (disposition of criminal charges by agreement between prosecutor and accused is "essential component" of administration of justice and, when properly administered, encouraged).

**The Altered Plea Bargain**

The trial court judge became aware on February 14, 2000 that timing constraints prevented her from adhering to the original bargain by imposing Petitioner's state court sentence to run concurrently to his federal court sentence, and so she gave him the opportunity to withdraw his plea and proceed to trial. P.M. (Feb. 14, 2000) 4.[5] The trial court judge did not specifically indicate

---

[5] The relevant portion of the plea colloquy before the Honorable Patricia D. Marks is as follows:
THE COURT: "This is on the third time for sentencing. There had been an agreement that the Court would sentence you to 15 to life concurrent with Federal time. At this point, Mr. Banner, there continues to be a variety of activities and proceedings going on in Federal Court, and they have not been able to get their act together regarding this matter. I don't think it is fair to continue to set things, keep things going this way . . . . The bottom line is going to be on [March 8], you will be sentenced or permitted to withdraw your plea, and we will go to trial and there will be no sentence promise. That means the deal changes. That's why I have to permit you to withdraw your plea, because I am not going to wait for the Federal Court to act . . . . So, at this point, if on March 8 the Federal sentence has not occurred, then my indication to you is the best I can do is keep my sentence promise, except regarding the concurrency in Federal. I could say I would like to see it concurrent, but I cannot bind a Federal Judge to that if he or she has not sentenced you by March 8. Since I cannot fully keep the sentence promise we had originally negotiated on that date, you would have the opportunity to accept that plea and sentence or reject it and seek a trial. Do you understand what I have explained to you regarding that?"
THE DEFENDANT: "I heard you."
THE COURT: "Pardon?"
THE DEFENDANT: "I heard what you said."

-10-

at that time if one of the original conditions of the plea bargain -- that Petitioner's statements would be used against him if he chose to proceed to trial -- was still in effect. P.M. (Feb. 14, 2000) 4. Petitioner argues that the trial court judge's failure to clarify this left him in a compromising position in that he had already made damaging statements during the plea colloquy and, if this condition was still in effect, he was now faced with two equally unappealing options (i.e., plead guilty or proceed to trial and have his damaging statements used against him). It is unclear whether Petitioner argues that he ultimately chose to enter the guilty plea not knowing whether the original condition was still in effect, or, if he did so because he believed the original condition was still in effect.[6] In either event, this Court finds Petitioner's argument unconvincing and disingenuous, and his position irrelevant to the issue of whether the plea itself was coerced. Petitioner's "argument" amounts to an after-the-fact expression of discontent with the substantive terms of the original plea agreement and the choice he made to enter a guilty plea and forego a trial. Petitioner was represented by not one, but two attorneys, who actively worked together to counsel him throughout

---

THE COURT: "You and your attorney will discuss this before March 8 so that this is really the final date, and we will go forward with the sentence on that date. Okay?"
THE DEFENDANT: [Indicating in the affirmative]

[6] It appears as though Petitioner argues the latter in that he indicates he was placed "in a position of no return" by pleading guilty in state court. Pet. Att. 9.

-11-

the duration of the period following his plea and his ultimate sentencing.[7] He was given ample time[8] and opportunity[9] to clarify his understanding of the plea and its consequences with counsel and/or the trial court. Accordingly, there is nothing in the record that suggests he entered his guilty plea without full understanding and explanation of his options and their consequences. Accordingly, this Court finds his claim to be without merit.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any

---

[7] The record shows that Petitioner's state court attorney carefully apprised Petitioner of his options and the consequences of each of those options throughout the pendency of the proceeding and immediately before Petitioner entered the final guilty plea. Petitioner's counsel made recommendations to Petitioner based on his own professional judgment. These recommendations included an explanation of what course of action would most likely result in the most favorable outcome given the particular facts and circumstances. P.M. (March 30, 2000) 6-11.

[8] Petitioner was advised on February 14, 2000 that if the Federal plea negotiations were not concluded by March 8, 2000, the deal would change and Petitioner would have to choose between withdrawing his plea and going to trial or entering the guilty plea.

[9] Sentencing was adjourned three times.

appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438(1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   July 29, 2009
         Rochester, New York